# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP2503 & 2017AP13 |
| COMPLETE TITLE: | Enbridge Energy Company, Inc. and Enbridge Energy, Limited Partnership, |
| |         Petitioners-Respondents-Petitioners, |
| |     v. |
| | Dane County, |
| |         Respondent-Appellant, |
| | Dane County Board of Supervisors, Dane County Zoning and Land Regulation Committee and Roger Lane Dane County Zoning Administrator, |
| |         Respondents. |
| | ------------------------------------------------- |
| | Robert Campbell, Heidi Campbell, Keith Reopelle, Trisha Reopelle, James Holmes, Jan Holmes and Tim Jensen, |
| |         Plaintiffs-Appellants, |
| |     v. |
| | Enbridge Energy Company, Inc., Enbridge Energy, Limited Partnership and Enbridge Energy Limited Partnership Wisconsin, |
| |         Defendants-Respondents-Petitioners. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 382 Wis. 2d 830,917 N.W.2d 232
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 27, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 26, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dane |
|   JUDGE: | Peter Anderson |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | A.W. BRADLEY, J. dissents. (opinion filed). |
|   NOT PARTICIPATING: | ABRAHAMSON, J. and DALLET, J. withdrew from participation. |

| | |
|---|---|
| ATTORNEYS: | |

For the defendants-respondents-petitioners (2016AP2503) and petitioners-respondents-petitioners (2017AP13), there were briefs filed by *Eric M. McLeod*, *Jeffrey L. Vercauteren*, *Joseph S. Diedrich*, and *Husch Blackwell LLP*, Madison. There was an oral argument by *Eric M. McLeod.*

For the respondent-appellant, there was a brief filed by *David Gault*, assistant corporation counsel. There was an oral argument by *David Gault.*

For the plaintiffs-appellants, there was a brief filed by *Patricia Hammel* and *Herrick & Kasdorf LLP*, Madison; and *Thomas R. Burney* and *Law Office of Thomas R. Burney LLC*, Crystal Lake, Illinois. There was an oral argument by *Patricia K. Hammel*.

An amicus curiae brief was filed on behalf of State of Wisconsin by *Sopen B. Shah*, deputy solicitor general, with whom on the brief was *Misha Tseytlin*, solicitor general, and *Brad D. Schimel*, attorney general.

An Amicus curiae brief was filed on behalf of Wisconsin Manufacturers & Commerce by *Corydon J. Fish* and *Wisconsin Manufacturers and Commerce*.

No. 2016AP2503 & 2017AP13
(L.C. No. 2016CV8 & 2016CV350)

STATE OF WISCONSIN                    :          IN SUPREME COURT

---

**Enbridge Energy Company, Inc. and Enbridge Energy, Limited Partnership,**

       Petitioners-Respondents-Petitioners,

  v.

**Dane County,**

       Respondent-Appellant,

**Dane County Board of Supervisors, Dane County Zoning and Land Regulation Committee and Roger Lane Dane County Zoning Administrator,**

       Respondents.

**FILED**

**JUN 27, 2019**

Sheila T. Reiff
Clerk of Supreme Court

---

**Robert Campbell, Heidi Campbell, Keith Reopelle, Trisha Reopelle, James Holmes, Jan Holmes and Tim Jensen,**

       Plaintiffs-Appellants,

  v.

**Enbridge Energy Company, Inc., Enbridge Energy, Limited Partnership and Enbridge Energy Limited Partnership Wisconsin,**

       Defendants-Respondents-Petitioners.

---

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 REBECCA GRASSL BRADLEY, J. Enbridge Energy Company[1] operates an interstate pipeline transporting liquid petroleum. Dane County issued to Enbridge a conditional use permit ("CUP") including two conditions requiring Enbridge to procure additional insurance prior to expanding its pipeline pump station. After Dane County initially approved the CUP with these insurance conditions, but pending Enbridge's appeal to the Dane County Board of Supervisors, the Wisconsin Legislature passed 2015 Wisconsin Act 55, which prohibits counties from requiring an interstate pipeline operator to obtain additional insurance when the pipeline operating company carries comprehensive general liability insurance with coverage for "sudden and accidental" pollution liability. Although Dane County recognized the impact of Act 55 on the enforceability of the insurance conditions, it nevertheless issued the CUP with the invalid conditions.

¶2 In response, Enbridge filed a petition for writ of certiorari, which the Dane County Circuit Court granted. The circuit court struck the two insurance conditions from the CUP as unenforceable under Act 55. The court of appeals reversed, concluding that Enbridge failed to show it carried the requisite

---

[1] The petitioners are Enbridge Energy Company, Inc., Enbridge Energy, Limited Partnership, and Enbridge Energy Limited Partnership Wisconsin. For ease of reference, we will refer to them collectively as "Enbridge."

coverage triggering the statutory prohibition barring Dane County from imposing additional insurance procurement requirements. Enbridge maintains that because it carries the requisite insurance, Act 55 rendered Dane County's extra insurance conditions unenforceable, and the proper remedy is to strike the illegal conditions, leaving the remainder of the permit in place. We agree with Enbridge, reverse the court of appeals decision, and reinstate the circuit court's order.

## I. BACKGROUND

¶3 In 2014, Enbridge applied for a zoning permit to expand the pumping capacity at its Waterloo Pump Station ("Pump Station") in the Town of Medina. The Pump Station is part of a pipeline that runs from Douglas County in northern Wisconsin, through Dane County, and into Illinois. The Dane County Zoning Administrator issued the permit on April 29, 2014, and Enbridge agreed to comply with all Dane County Ordinances.

¶4 On June 12, 2014, however, the Zoning Administrator revoked the zoning permit because the expansion and other improvements required a CUP. Enbridge applied for a CUP on August 19, 2014, which the Town Board of Medina approved on October 1, 2014. The Town Board attached two conditions requiring Enbridge to sign an agreement for the use of the Town's roads and to construct a spill basin, respectively.

¶5 On November 11, 2014, the CUP application came before the Dane County Zoning and Land Regulation Committee ("Zoning Committee"), which directed its staff to "pursue a condition requiring a surety bond for assurances of spill clean up due to

3

the increase[d] pressure that the pumping station will create on the existing line," and requested that Enbridge produce documentation of its insurance for catastrophic events.[2]  The Zoning Committee considered the CUP again on January 27, 2015, and voted to retain an insurance expert "for the purposes of determining the insurance needs of the proposal."  The insurance expert, David Dybdahl, prepared an insurance and risk management report for the Zoning Committee.  He recommended:

- That Enbridge agree to indemnify and hold harmless Dane County for pollution losses Per the terms as outlined in Enbridge's proposal titled "CONDITIONAL USE PERMIT ("CUP") CONDITIONS";

- That Enbridge procures and maintains liability insurance, including Environmental Impairment Liability Insurance, making Dane County an Additional Insured to a level equal to 10% of the Line 6 B loss costs, $125,000,000;

- As part of this overall liability insurance requirement, Enbridge should purchase $25,000,000 of EIL [Environmental Impairment Liability] Insurance on the proposed pumping station in Dane County.

¶6  Dybdahl noted that in preparing his report, "Enbridge declined to provide the actual insurance policies (42 of them in total) to [him] for review, claiming that the documents contain trade secrets."  Instead, Enbridge gave him summaries of the policies.  Although he did not review the actual policies, Dybdahl "found [Enbridge's] summary of their insurance program

---

[2] The CUP application first came before the Zoning Committee on October 28, 2014.  Due to significant opposition, the Zoning Committee postponed action until the November 2014 meeting.

to be credible," and he additionally observed that reading the policies "was not necessary to evaluate the insurance coverage parameters of concern."

¶7 Dybdahl determined that Enbridge had $700,000,000 of general liability insurance coverage for bodily injury, property damage, personal injury, and defense costs. His report noted that this coverage was "confirmed by a certificate of insurance prepared by [Enbridge's] insurance broker." The policy period ran through May 1, 2015. Dybdahl also wrote that Enbridge's general liability policy had an exception to the standard pollution exclusion:

> "Sudden and accidental pollution liability" is what Enbridge shows for insurance coverage in their financial statements today. However, the pollution exclusion exemption in the Enbridge policy is not limited to sudden or quick events. A Property Damage or Bodily Injury claim arising from a pollution event that begins and is discovered within 30 days and is reported to the insurance company within 90 days is not excluded by the Pollution Exclusion in the primary Enbridge General Liability insurance policy. Hence the words "sudden and accidental" carry no weight in the current pollution exclusion. A more accurate term to describe the limited coverage for pollution events within the current General Liability Insurance policy is "Time Element Pollution" coverage.

(Emphasis added.) Enbridge did not have separate environmental impairment liability insurance, also known as pollution insurance. Dybdahl acknowledged that "it is very possible that Enbridge is already purchasing all of the General Liability insurance capacity available in the world for their operations. Therefore, I do not recommend the purchase of higher G[eneral]

L[iability] limits for the operation of the . . . Pumping Station."

¶8    Dybdahl appeared before the Zoning Committee on April 14, 2015.  When asked by a Zoning Committee member to describe a "time element" exception, he explained:

> So the total pollution release from the time it begins to the time it is discovered, in the Enbridge policy must transpire in 30 days.  That's the time element, and then there's 90 days to report it to the insurance company.  It used to be referred to as sudden and accidental pollution insurance, but the words sudden and accidental were removed from the insurance coverage in 1986.  So it doesn't——no one really could define what sudden meant, so they went to we're not going to argue whether it's sudden, because nobody can figure out how darn quick that needs to be, so we'll just say [it] has to happen within 30 days start—— start to the time it's discovered.  That's the time element.

(Emphasis added.)

¶9    After reviewing the report and hearing Dybdahl's testimony, the Zoning Committee considered the CUP with twelve conditions.  Two of those conditions imposed insurance coverage requirements and are the subject of this appeal:

> 7. Enbridge shall procure and maintain liability insurance as follows:  $100,000,000 limits in General Liability Insurance with a time element exception to the pollution exclusion (currently in place), and $25,000,000 of Environmental Impairment Liability insurance.  Enbridge shall list Dane County as an Additional Insured on the total of $125,000,000 of combined liability insurance.
>
> 8. The required General Liability Insurance and Environmental Impairment Liability insurances shall meet the technical insurance specifications listed in Appendix A of the insurance consultant's report, which is incorporated herein by reference.

(Emphasis added.) The Zoning Committee unanimously approved the CUP with the twelve conditions. The Town of Medina then re-approved the CUP with the additional requirements on April 20, 2015. On May 4, 2015 Enbridge appealed to the Dane County Board of Supervisors ("County Board"), challenging the two insurance requirements.

¶10 Before the appeal was heard, however, the Legislature passed Act 55. Two sections of the Act addressed CUPs and insurance, respectively. First, § 1922am created Wis. Stat. § 59.69(2)(bs) (2017-18),[3] which states:

> As part of its approval process for granting a conditional use permit under this section, a county may not impose on a permit applicant a requirement that is expressly preempted by federal or state law.

(Emphasis added.) Second, § 1923e created Wis. Stat. § 59.70(25), which states:

> A county may not require an operator of an interstate hazardous liquid pipeline to obtain insurance if the pipeline operating company carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability.

¶11 Because "the county cannot enforce the insurance requirements of [the] CUP . . . that were the subject of the Enbridge appeal," the County Board removed the CUP appeal from its July agenda. A few days later, the Dane County Assistant Corporation Counsel wrote to the Zoning Administrator:

---

[3] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

7

> A recent enactment of the legislature that was included in the Budget Bill prohibits counties from requiring an operator of an interstate hazardous liquid pipeline to obtain insurance if the company carries comprehensive general liability coverage that includes sudden and accidental pollution liability. Since Enbridge has the required general liability coverage, the CUP condition requiring additional insurance is unenforceable by the county.
>
> . . . .
>
> [Wisconsin Stat. §] 59.70(25) expressly prohibits a county from requiring a pipeline operator to obtain insurance if they have the required coverage. Therefore, Dane County has no authority to require Enbridge to obtain additional insurance coverage. There is no issue of retroactive application of the statute. By the express language of the statute, effective July 14, 2015 the county is prohibited from requiring the insurance coverage. When the CUP was approved is irrelevant. The insurance conditions are rendered unenforceable prospectively by the language of § 59.70(25).

¶12 The Zoning Administrator then notified Enbridge by letter that the CUP "has been revised to reflect" new legislation prohibiting counties from "requiring additional insurance of an operator of an interstate hazardous liquid pipeline beyond" its CGL insurance. On that basis, the Zoning Administrator removed conditions 7 and 8 from Enbridge's CUP. The Zoning Committee, however, concluded that the "Zoning Administrator did not have the authority to revise the conditions of approval." On September 29, 2015, the Zoning Committee directed the Zoning Administrator to restore the insurance requirements in the CUP as originally approved by the Zoning Committee on April 14, 2015. Instead of removing the requirements, the Zoning Committee commanded that "[a] note

8

shall be added to the conditional use permit which identifies that [Dane] County's ability to enforce conditions 7 & 8 [is] affected by the State Budget Bill, 2015 Wisconsin Act 55." On October 9, 2015, the Zoning Administrator sent a letter informing Enbridge that the Zoning Committee had instructed him to include the insurance conditions in the CUP exactly as initially approved. The letter also notified Enbridge that "[a]s part of the Committee's direction, a note has been added to the conditional use permit which identifies that conditions 7 & 8 are unenforceable by [Dane] County due to the State Budget Bill[.]"

¶13 Enbridge appealed the Zoning Committee's decision to reinsert the insurance conditions with the added note to the County Board, which held a hearing on December 3, 2015. After a summary of the CUP by the Zoning Administrator, Enbridge's counsel affirmed that at the time Dane County issued the CUP, "Enbridge had $700 million worth of general liability insurance which included sudden and accidental pollution coverage" that "has since been raised to $860 million." Following questions from several supervisors, and numerous comments from the public, the County Board voted 27-2 to deny the appeal and keep the CUP with conditions 7 and 8 intact along with the note regarding their unenforceability.

¶14 In January 2016, Enbridge filed a petition for a writ of certiorari under Wis. Stat. § 59.694(10) in Dane County Circuit Court. Enbridge argued that the County Board's decision affirming the Zoning Committee should be reversed because the

9

insurance conditions were unenforceable under Act 55. In February 2016, Robert and Heidi Campbell, Keith and Trisha Reopelle, James and Jan Holmes, and Tim Jensen——all of whom owned property near the Pump Station (collectively, "Landowners")——filed a complaint for injunctive relief pursuant to Wis. Stat. § 59.69(11), which allows an "owner of real estate within the district affected by the [zoning] regulation" to enforce a zoning ordinance. The Landowners asked "the Court to exercise its injunctive powers to enforce and compel compliance with Condition 7 of the Conditional Use Permit."

¶15 The circuit court consolidated the Landowners' case and Enbridge's certiorari action, and issued an oral ruling on July 11, 2016. The circuit court concluded that Act 55 rendered the insurance conditions void and unenforceable and adjourned the matter for a later hearing on the appropriate remedy. After the parties briefed the issue, the circuit court determined the appropriate remedy was to strike the two unenforceable conditions from the CUP:

> I don't think you can put conditional uses that will come into effect upon some contingency years in the future that we don't know whether or not it will occur. We can't create contingent future conditions is my understanding of conditional use permits. You can't just do that.
>
> . . . .
>
> But in my view, those circumstances really, really counsel against authorizing the [Zoning Committee] or the county board to start again on the conditional use permit even independent of the vested rights issue, but the vested rights issue is not insubstantial. Like I said, a lot of water has flowed

under the bridge or tar sands through the pipeline since the legislation a year ago, and <u>the time for the county to have acted was last fall, and rather than take the action</u> that they now want me to authorize them to do, <u>they instead affirm the issuance of the conditional use permit as is with unenforceable provisions</u>.

(Emphasis added.) The circuit court also dismissed the Landowners' injunction action under Wis. Stat. § 59.69(11) because the conditions the Landowners sought to enforce were unenforceable, and they "wouldn't be enforcing anything."

¶16 Dane County and the Landowners appealed the circuit court's decision, and the court of appeals consolidated the appeals and reversed. See Enbridge Energy Co. v. Dane Cty., Nos. 2016AP2503 & 2017AP13, unpublished slip op. (Wis. Ct. App. May 24, 2018). In part, the court of appeals held that "Enbridge failed to show to the zoning committee that, as required to trigger the Act 55 insurance limitation, it 'carries' insurance that 'includes' any particular coverage, and also failed to show that it carries coverage 'for sudden and accidental pollution liability.'" Id., ¶41. The court of appeals construed Act 55 to mean "that the insurance limitation is triggered only after it is shown that an operator has the specified insurance, and it is not sufficient to show that the operator has carried this insurance in the past or might obtain it in the future." Id., ¶71. According to the court of appeals, "Enbridge failed to show to the zoning committee that it would maintain the coverage delineated in Act 55, but instead pointed only to coverage that was, at best, lapsing." Id., ¶75. The court of appeals additionally concluded that "Enbridge

11

failed to demonstrate at any time that it carried sudden and accidental pollution liability insurance." Id., ¶78. Relying on Just v. Land Reclamation, Ltd., 155 Wis. 2d 737, 456 N.W.2d 570 (1990)——an insurance contract interpretation case—— the court of appeals interpreted "sudden and accidental" to include "pollution that causes either 'abrupt or immediate' or 'unexpected and unintended damages.'" Enbridge Energy Co., Nos. 2016AP2503 & 2017AP13, unpublished slip op., ¶82 (quoting Just, 155 Wis. 2d at 760; see also Just, 155 Wis. 2d at 741-42, 745-46). The court of appeals held that Enbridge failed to show that its policy covered "unexpected and unintended" pollution liability. Enbridge Energy Co., Nos. 2016AP2503 & 2017AP13, unpublished slip op., ¶96.

¶17 The court of appeals rejected Enbridge's proposed remedy to strike conditions 7 and 8 because it "would . . . improperly deprive the zoning committee of the opportunity to consider what valid permit conditions, insurance or otherwise, may be adequate to satisfy the permitting standards established by ordinance . . . with the benefit of a correct understanding of the Act 55 insurance limitation." Id., ¶98. Instead, Dane County persuaded the court of appeals to apply a rule adopted by Connecticut, the District of Columbia, and Hawaii "that the appropriate judicial remedy, when a court holds permit conditions invalid and the conditions were integral to approval of the permit, is to reverse permit approval and not to sever the invalid conditions." Id., ¶103. Enbridge filed a petition for review with this court, which we granted.

12

## II.   DISCUSSION

### A.   Standard of Review

¶18   In this certiorari case, we review the decision of the County Board rather than the decisions of the lower courts.  See Oneida Seven Generations Corp. v. City of Green Bay, 2015 WI 50, ¶¶41-42, 362 Wis. 2d 290, 865 N.W.2d 162.  Our inquiry is limited to determining:

> (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

Ottman v. Town of Primrose, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411.  The focus of this appeal is whether the County Board proceeded on a correct theory of law and whether Wis. Stat. §§ 59.69(2)(bs) and 59.70(25) render conditions 7 and 8 unenforceable.  We must also decide whether the Landowners may enforce conditions 7 and 8, which requires us to interpret Wis. Stat. § 59.69(11).  Finally, we determine the proper remedy on certiorari, which requires us to interpret Wis. Stat. § 59.694(10).

¶19 Statutory interpretation is a question of law we review de novo.  CED Props., LLC v. City of Oshkosh, 2018 WI 24, ¶20, 380 Wis. 2d 399, 909 N.W.2d 136.  "[S]tatutory interpretation 'begins with the language of the statute,'" and "[i]f the meaning of the statute is plain, we ordinarily stop the inquiry."  State ex rel. Kalal v. Circuit Court for Dane

Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. Context and structure are both important to meaning, and "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46. "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id.

## B. Analysis

### 1. The County Board's Decision

¶20 The first issue is whether Wis. Stat. §§ 59.70(25) and 59.69(2)(bs) (collectively, "Act 55") render conditions 7 and 8 in the CUP unenforceable. Section 59.70(25) provides that "[a] county may not require an operator of an interstate hazardous liquid pipeline to obtain insurance if the pipeline operating company carries comprehensive general liability [CGL] insurance coverage that includes coverage for sudden and accidental pollution liability." Section 59.69(2)(bs) provides that "a county may not impose on a permit applicant a requirement that is expressly preempted by . . . state law." The text of each statute is straightforward: if an operator of an "interstate hazardous liquid pipeline" (the parties agree that Enbridge fits

14

this category) carries CGL insurance that includes coverage for "sudden and accidental pollution liability," then a county may not require the operator to obtain additional insurance. Therefore, if Enbridge carries CGL insurance for "sudden and accidental pollution liability," conditions 7 and 8 requiring Enbridge to obtain additional insurance are unenforceable.

¶21 Dane County concedes that conditions 7 and 8 are unenforceable under Act 55. The Landowners, however, contend that Wis. Stat. § 59.70(25) does not apply for two reasons: (1) Enbridge failed to prove that it carried any insurance, and (2) Enbridge's "time element" pollution insurance, as Dybdahl characterized it, is not the same as "coverage for sudden and accidental pollution" under § 59.70(25). The Landowners rely on Just, 155 Wis. 2d 737, to define "sudden and accidental" as including "coverage for both 'abrupt or immediate' and 'unexpected and unintended' casualty events." Consistent with the court of appeals decision, the Landowners contend that § 59.70(25) applies only if Enbridge provides coverage for all "unexpected and unintended" pollution events, regardless of when the pollution damage is discovered or reported to the insurer. We reject both arguments.

¶22 The certiorari record contained ample and uncontroverted evidence that Enbridge carried the requisite insurance. Dybdahl's report and testimony establish that Enbridge carried CGL insurance covering pollution events provided they are discovered within 30 days and reported to the insurance company within 90 days. During the December 2015

15

hearing when the County Board issued its final decision on the CUP, Enbridge reaffirmed that it continued to carry insurance, with increased policy limits. Nothing in the certiorari record contradicts Enbridge's summary of insurance coverage presented to Dybdahl, who found Enbridge's representations satisfactory and confirmed by the certificate of insurance furnished by Enbridge's insurance broker. Nor did the Landowners introduce any contrary evidence as part of their injunction action. Therefore, we reject the Landowners' argument that Enbridge failed to show it carried insurance.[4]

¶23 The Landowners assert that Enbridge must not only carry insurance but also must maintain it in perpetuity in order to be exempt from Dane County's imposition of additional insurance requirements. Setting aside the unlikelihood that a hazardous liquid pipeline operator would go uninsured and expose itself to catastrophic liability, the statutory text does not require an operator to "maintain" the specified insurance coverage. Wisconsin Stat. § 59.70(25) precludes a county from requiring additional insurance provided the operator "carries" CGL coverage for sudden and accidental pollution. Nothing more is required of the operator in order to avail itself of the statutory exemption from additional, county-imposed insurance requirements. We decline to add words to the statute, as the

_____

[4] The Landowners' insistence that we must remand so Dane County can verify Enbridge's insurance also fails because Enbridge did present evidence of its insurance. Wisconsin Stat. § 59.70(25) requires nothing more.

16

Landowner's argument would necessitate. "Under the omitted-case canon of statutory interpretation, '[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est). That is, a matter not covered is to be treated as not covered.'" State ex rel. Lopez-Quintero v. Dittman, 2019 WI 58, ¶18, ___ Wis. 2d ___, ___ N.W.2d ___ (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012)); see also Wisconsin Ass'n of State Prosecutors v. WERC, 2018 WI 17, ¶45, 380 Wis. 2d 1, 907 N.W.2d 425 ("Nothing is to be added to what the text states or reasonably implies" (quoting Scalia & Garner, Reading Law at 93)). "One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." Fond du Lac Cty. v. Town of Rosendale, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989).

¶24 We reject the Landowners' second argument as well. Enbridge's "time element" pollution insurance is congruent with the "sudden and accidental" coverage referenced in Wis. Stat. § 59.70(25). Contrary to the Landowners' construction of the statute, it does not require coverage for all unexpected and unintended pollution regardless of when the pollution event is discovered or reported to the insurer. The text of § 59.70(25) requires only that the pipeline operator carry CGL insurance with coverage for "sudden and accidental" pollution liability. As Dybdahl confirmed, the term "sudden and accidental" is "commonly used" in reference to CGL policies covering pollution events that "happen in certain timeframes." Indeed, Dybdahl

17

explained "because nobody can figure out how darn quick ["sudden"] needs to be . . . we'll just say [it] has to happen within 30 days start . . . to the time it is discovered. That's the time element." The statute contains no language requiring the pollution coverage to apply regardless of when the pollution is discovered or when it is reported to the insurer in order for a county to be precluded from imposing additional insurance requirements on the pipeline operator. According to Dybdahl, the meaning of "sudden" within this insurance context has morphed into a pollution event that is discovered within 30 days.

¶25 The statute does not define "sudden" or "accidental." According to Dybdahl, the insurance industry abandoned these terms nearly 30 years before the Legislature enacted Wis. Stat. § 59.70(25) because "no one really could define what sudden meant." Accordingly, we give these words their "common, ordinary, and accepted" meanings. <u>Kalal</u>, 271 Wis. 2d 633, ¶45.

¶26 "Accidental" means something unexpected, unintended, or that happened by chance rather than intentionally. Common dictionary definitions support this meaning. <u>See</u> <u>Accidental</u>, Black's Law Dictionary (10th ed. 2014) (defining "accidental" as "[n]ot having occurred as a result of anyone's purposeful act; esp., resulting from an event that could not have been prevented by human skill or reasonable foresight"); <u>Accidental</u>, Shorter Oxford English Dictionary (6th ed. 2007) (defining "accidental" in part as "[h]appening by chance, undesignedly, or unexpectedly"); <u>Accidental</u>, American Heritage Dictionary (5th

18

ed. 2011) (defining "accidental" as something "[o]ccurring unexpectedly, unintentionally, or by chance").

¶27  "Sudden" may be used both in this sense as well as in a temporal sense.  See Sudden, Black's Law Dictionary (6th ed. 1990) (defining "sudden" as "[h]appening without previous notice or with very brief notice," "occurring unexpectedly," "unforeseen," or "unprepared for");[5] Sudden, Shorter Oxford English Dictionary (6th ed. 2007) (defining "sudden" in both a temporal sense, as in "without delay," "speedy," or "immediate" and to describe the unexpected, unintended, or unforeseen nature of something); Sudden, American Heritage Dictionary (5th ed. 2011) (defining "sudden" as both "[h]appening without warning" or "unforeseen" and "[h]appening without delay; hasty or immediate"); see also Just, 155 Wis. 2d at 745-46.

¶28 While the court of appeals correctly deduced that "sudden" can signify something that is "unexpected and unintended" (as we confirmed in Just), the more reasonable interpretation of "sudden" in the context of Wis. Stat. § 59.70(25) applies a temporal meaning, such as something happening quickly, abruptly, or immediately.  Interpreting "sudden" to mean "unexpected and unintended," as the court of

---

[5] The Tenth Edition of Black's Law Dictionary does not define "sudden," but it does describe a "sudden-and-accidental [pollution] clause" as "contain[ing] an exception [to the pollution exclusion] under which the damages are covered . . . if the discharge or other release was sudden and accidental."  See Pollution Exclusion, Black's Law Dictionary (10th ed. 2014).

19

appeals did below,[6] creates an avoidable surplusage problem: it is redundant of the word "accidental," which also means unexpected or unintended. Such an interpretation needlessly leaves "sudden" and "accidental" with the same meaning, which our rules of statutory interpretation counsel against. "If possible, every word and every provision is to be given effect (verba cum effectu sunt accipienda). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Scalia & Garner, supra ¶23, at 174; see also Donaldson v. State, 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980) ("A statute should be construed so that no word or clause shall be rendered surplusage and every word if possible should be given effect.").

¶29 While the temporal sense of "sudden" can have "an elastic temporal connotation that varies with expectations[,]"[7] given the inclusion of "accidental"——which already means unexpected and unintended——in Wis. Stat. § 59.70(25), the temporal connotation is the most reasonable meaning for "sudden" within the context of this statute. Whenever possible, "courts avoid a reading that renders some words altogether redundant." Scalia & Garner, supra ¶23, at 176. Interpreting "sudden" in a

---

[6] See Enbridge Energy Co. v. Dane Cty., Nos. 2016AP2503 & 2017AP13, unpublished slip op., ¶82 (Wis. Ct. App. May 24, 2018).

[7] Just v. Land Reclamation, Ltd., 155 Wis. 2d 737, 745-46, 456 N.W.2d 570 (1990) (quoting Claussen v. Aetna Cas. & Sur. Co., 380 S.E.2d 686, 688 (Ga. 1989)).

temporal sense gives each word meaning, and is consistent with the absence of any statutory language limiting the qualifying coverage to only those CGL policies without time limits on the discovery and reporting of pollution events.

¶30 Contrary to the Landowners' position, which the court of appeals adopted, Just did not hold that coverage for "sudden and accidental pollution liability" necessarily includes "pollution that causes either 'abrupt or immediate' or 'unexpected and unintended damages.'" See Enbridge Energy Co., Nos. 2016AP2503 & 2017AP13, unpublished slip op., ¶82 (emphasis added; quoted source omitted). In Just we observed that "recognized dictionaries differ on the meaning of the term 'sudden,'" and we acknowledged that the term can mean either something that is "unexpected and unintended" or something that is "abrupt and immediate." Just, 155 Wis. 2d at 745-46. Because the word has multiple meanings, and under insurance interpretation rules we "construe the ambiguity in favor of the insured and against the insurance company that drafted the ambiguous language," we gave the term a meaning favoring the insured——"unexpected and unintended." Id. at 746-47. Significantly, Just interpreted an insurance contract, not a statute. See id. at 744-45. In this case, we interpret statutes, not an insurance contract. Accordingly, we assign the most reasonable meaning given the statutory context, favoring neither party. See Kalal, 271 Wis. 2d 633, ¶54.

¶31 According to Dybdahl, Enbridge's CGL insurance covered bodily injury or property damage resulting from pollution as

21

long as it "is discovered within 30 days and is reported to the insurance company within 90 days." As Dybdahl explained, Enbridge's insurance coverage for pollution events "is not limited to sudden or quick events." Enbridge's policy provides coverage for claims "arising from a pollution event that begins and is discovered within 30 days" after its occurrence "and is reported to the insurance company within 90 days." In other words, Enbridge's policy includes coverage broader than the statutorily-described insurance. Therefore, Wis. Stat. § 59.70(25) applies and precludes Dane County from requiring Enbridge to obtain additional insurance.

¶32 Conditions 7 and 8 of the CUP required Enbridge to obtain additional insurance that met certain technical specifications, which went beyond the statutorily-described insurance.[8] Wisconsin Stat. § 59.69(2)(bs) prohibits counties

---

[8] Condition 8 is not merely a proof-of-insurance requirement, as the Landowners maintain. It provides "[t]he required General Liability Insurance and Environmental Impairment Liability insurances shall meet the technical insurance specifications listed in Appendix A." It thereby dictates the specifics of the insurance coverage required by condition 7. Therefore, it is unenforceable under Act 55.

Furthermore, during oral argument, Enbridge repeatedly stated it would provide proof of insurance to Dane County, and the record supports that Enbridge carried the requisite insurance. Accordingly, the Landowners' and Dane County's argument that Dane County could require proof of insurance as a condition in the CUP is a red herring. Significantly, Dane County never included a CUP condition requiring Enbridge to prove it had a CGL policy that satisfied Wis. Stat. § 59.70(25) nor did it require anything more than the summary provided by Enbridge before it issued the CUP. In fact, Dane County proceeded on the assumption that Enbridge carried insurance

(continued)

22

from imposing on a permit applicant any requirement expressly preempted by state law. Wisconsin Stat. § 59.70(25) preempts county-imposed insurance requirements for pipeline operators that carry CGL insurance policies including pollution liability coverage. We therefore conclude that conditions 7 and 8 are unenforceable under Act 55.

¶33 Our conclusion that conditions 7 and 8 are unenforceable disposes of the Landowners' attempt to enforce them under Wis. Stat. § 59.69(11) as well. Under that statute, compliance with county zoning ordinances "may also be enforced by injunctional order at the suit of the county or an owner of real estate within the district affected by the regulation." § 59.69(11). Enbridge disputes the Landowners' characterization of a CUP or its conditions as "ordinances." We need not resolve whether a CUP or its conditions constitute "ordinances" within the meaning of § 59.69(11) because Wis. Stat. § 59.70(25) renders these conditions unenforceable and nothing in § 59.69(11) reanimates void conditions. The Landowners therefore enjoy no better footing than Dane County in their attempts to enforce the unlawful conditions 7 and 8 nor do they explain why they should be able to enforce conditions Dane County cannot.

---

consistent with its representations. We therefore do not address what additional conditions——such as proof of insurance—— that counties may include in CUPs even if § 59.70(25) bars them from requiring a pipeline operator to obtain additional insurance.

## 2. The Remedy

¶34 We next consider whether the circuit court properly struck conditions 7 and 8 from the CUP as the appropriate remedy, as Enbridge maintains, or whether the CUP should be remanded to the Zoning Committee, as the Landowners and Dane County propose.  Dane County argues that the Zoning Committee "is the agency charged with making findings as to whether issuance of a CUP is in the public interest," and it "never considered issuing the [CUP] without the insurance conditions." Dane County maintains that striking the conditions usurps the Zoning Committee's authority to determine whether issuing a CUP is appropriate under Dane County's ordinances.  Dane County contends that "the function of the reviewing court ends when an error of law is laid bare."  See Federal Power Comm'n v. Idaho Power Co., 344 U.S. 17, 20 (1952).

¶35 The Landowners also urge remand as the proper remedy because the Zoning Committee "never had the opportunity to determine whether Enbridge has Sudden and Accidental Insurance and if not, whether [it] would approve the CUP without . . . Conditions No 7 and 8."  Like Dane County, the Landowners insist the insurance conditions were integral to the CUP, and "[t]he Act 55 Insurance Limitations were clearly not anticipated" by the Zoning Committee.  In the Landowners' view, the Zoning Committee must be allowed to reconsider the CUP in order to confirm that Enbridge will maintain insurance coverage sufficient to protect the residents of Dane County or "craft additional conditions" to do so.  The Landowners are incorrect.

24

We reject remand as the remedy and conclude the circuit court properly struck the unlawful CUP conditions because Wis. Stat. § 59.694(10) expressly permits such modification.

¶36 The Zoning Committee had authority to attach conditions to the CUP to ensure compliance with Dane County's zoning ordinances and standards for issuing CUPs, but not conditions violative of Wisconsin law. County ordinances may provide for "conditional uses by virtue of a special use or conditional use permit" in addition to permitted uses under the applicable zoning ordinances. Town of Rhine v. Bizzell, 2008 WI 76, ¶20, 311 Wis. 2d 1, 751 N.W.2d 780. "A conditional use permit allows a property owner 'to put his property to a use which [an] ordinance expressly permits when certain conditions [or standards] have been met.'" Id., ¶21 (quoted source omitted; second alteration in original). Under Dane County's ordinances, the Zoning Committee must find that the standards set forth in Dane Cty. Or. § 10.255(2)(h)[9] have been met prior to

---

[9] Dane County Ordinance § 10.255(2)(h) provides:

(h) Standards. No application for a conditional use shall be granted by the town board or zoning committee unless such body shall find that all of the following conditions are present:

1. That the establishment, maintenance or operation of the conditional use will not be detrimental to or endanger the public health, safety, comfort or general welfare;

2. That the uses, values and enjoyment of other property in the neighborhood for purposes already permitted shall be in no foreseeable manner

(continued)

25

issuing a CUP. See Dane Cty. Or. § 10.255(2)(b) ("No permit shall be granted when the zoning committee . . . determines that the standards are not met[.]").

¶37 Neither the Zoning Committee's obligation to ensure the standards in Dane County Ordinance § 10.255 have been met, nor its authority to impose CUP conditions, however, precludes a reviewing court from modifying a CUP by striking unlawful conditions. On certiorari review under Wis. Stat. § 59.694(10), "[t]he court may reverse or affirm, wholly or partly, or may modify, the decision brought up for review." § 59.694(10) (emphasis added). This statutory language expressly authorizes the reviewing court on certiorari to modify the decision under review. In this case, the circuit court acted well within its statutory authority to modify the County Board's decision to

substantially impaired or diminished by establishment, maintenance or operation of the conditional use;

3. That the establishment of the conditional use will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district;

4. That adequate utilities, access roads, drainage and other necessary site improvements have been or are being made;

5. That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets; and

6. That the conditional use shall conform to all applicable regulations of the district in which it is located.

issue the CUP with what the County Board knew were illegal insurance conditions.

¶38 Our decision in Adams v. State Livestock Facilities Siting Review Board, 2012 WI 85, 342 Wis. 2d 444, 820 N.W.2d 404, supports modifying a CUP by striking conditions as an appropriate remedy. In that case, Wisconsin law allowed the Town of Magnolia to impose more stringent conditions on a CUP for a livestock facility than those prescribed by State law, but only if the Town made certain factual findings. Id., ¶¶53-56. The Town failed to do so, rendering the challenged CUP conditions improper. Id., ¶56. Wisconsin Stat. § 93.90(5)(d) required the State Livestock Facilities Siting Review Board ("Siting Board") to "reverse the decision of the political subdivision" if it determined that a challenge to permit conditions was valid. Adams, 342 Wis. 2d 444, ¶61. We held that the Siting Board properly modified the CUP by striking the invalid conditions rather than simply reversing the Town's decision to impose those conditions on the CUP and returning the applicant to the beginning of the permitting process. Id., ¶¶60, 64-65. We concluded that § 93.90(5)(d) granted the Siting Board the "implied power" to modify the CUP by removing the invalid conditions. Adams, 342 Wis. 2d 444, ¶62. Our conclusion was "compelled by the unusual circumstances of the case," including the "absurd[ity]" of requiring the permit applicant "to return to the beginning of the application process"——which had taken over four years——"because of the Town's mistake." Id., ¶¶63-65.

27

¶39 The court of appeals, Dane County, and the Landowners all highlight the procedural and statutory differences between Adams and the present case. These distinctions are irrelevant. Under Adams, striking CUP conditions——a statutorily-authorized remedy——does not encroach upon the authority of a municipality that chose to impose unlawful conditions. In this case, a court's authority to strike unlawful conditions on certiorari review is even clearer than in Adams; the circuit court here had explicit authority under Wis. Stat. § 59.694(10) to "modify" the County Board's decision, in addition to the option of simply affirming or reversing. The circuit court exercised that authority by striking conditions 7 and 8 from the CUP in order to conform it to the law. Contrary to the court of appeals' characterization of the circuit court's action, by striking conditions 7 and 8, the circuit court did not "usurp[] the authority of the zoning committee." See Enbridge Energy Co., Nos. 2016AP2503 & 2017AP13, unpublished slip op., ¶104. Rather, the circuit court corrected the Zoning Committee's improper imposition of unlawful CUP conditions.

¶40 There may be circumstances in which reversing a CUP and remanding to allow the municipal authority to reconsider its decision would be appropriate. For example, in Lamar Central Outdoor, Inc. v. Board of Zoning Appeals, 2005 WI 117, 284 Wis. 2d 1, 700 N.W.2d 87, we remanded a decision denying a zoning variance because the law had changed, and the "Board should . . . have the opportunity to reevaluate the facts under" the new legal standard. Id., ¶23. In this case, Dane County

28

knew that Act 55 rendered the conditions unenforceable but it issued the CUP with those conditions anyway. At oral argument, Dane County conceded the County Board could have sent the CUP back to the Zoning Committee to conduct "meaningful review" of the CUP without the invalid insurance conditions and to consider whether the CUP should be issued without them. The County Board, however, decided not to send the CUP back to the Zoning Committee to reconsider the standards in Dane County Ordinance § 10.255(2)(h) in light of Act 55. Instead, the County Board affirmed the issuance of the CUP knowing that two of its conditions were unlawful and therefore unenforceable. It would be senseless to give the Zoning Committee the opportunity to reevaluate its decision under these circumstances. As the circuit court recognized, "the time for the County to have acted was last fall [2015], and . . . they instead affirm[ed] the issuance of the conditional use permit as is with unenforceable provisions." In Lamar Central Outdoor, Inc., remand was the only available remedy because the zoning board denied the variance. Id., ¶12. As a result, unlike this case, there was nothing to modify.[10]

---

[10] Dane County and the Landowners additionally rely on cases in Connecticut, the District of Columbia, and Hawaii holding that striking individual CUP conditions is inappropriate when those conditions were "essential" or "integral" to the decision to issue the permit. See e.g., Vaszauskas v. Zoning Bd. of Appeals, 574 A.2d 212, 215-16 (Conn. 1990); President & Dirs. of Georgetown Coll. v. District of Columbia Bd. of Zoning Adjustment, 837 A.2d 58, 82 (D.C. 2003); Department of Envtl. Servs. v. Land Use Comm'n, 275 P.3d 809, 821-22 (Haw. 2012). We decline to adopt the integral-to-the-permit analysis applied in
(continued)

29

¶41 By affirming the issuance of the CUP, rather than remanding it to the Zoning Committee for reconsideration in light of Act 55, the County Board issued the CUP with two unenforceable insurance requirements—conditions 7 and 8. As Dane County conceded at oral argument, the County Board effectively issued the CUP without conditions 7 and 8 by deciding to issue the permit after Act 55 invalidated them. In Adams, we determined it would be absurd to force the permit applicant to repeat the permitting process due to the Town's mistake. Adams, 342 Wis. 2d 444, ¶65. In this case, it would be even more absurd to force Enbridge to repeat the permitting process when the County Board knowingly issued a CUP with unlawful conditions. Remanding the case to the Zoning Committee would not remedy the County Board's inclusion of unlawful conditions so much as it would reward Dane County for imposing "impermissible, extra-legal conditions." Id. at ¶63. Because Dane County chose to condition the CUP in disregard of Act 55, the circuit court properly struck the invalid conditions in accordance with its express authority under Wis. Stat. § 59.694(10) to grant this remedy.

### III. CONCLUSION

¶42 The insurance conditions imposed by Dane County in the CUP issued to Enbridge were rendered unenforceable by Act 55.

---

three foreign jurisdictions and instead apply our analysis in Adams v. State Livestock Facilities Siting Review Board, 2012 WI 85, 342 Wis. 2d 444, 820 N.W.2d 404.

30

Enbridge carried the requisite insurance under Wis. Stat. § 59.70(25) including coverage for "sudden and accidental pollution liability." The statute barred Dane County from requiring Enbridge to obtain additional insurance. The circuit court properly remedied Dane County's imposition of unlawful insurance conditions by striking them from the CUP. A remand would be inappropriate given that Dane County knew when it approved the CUP that Act 55 rendered the insurance conditions invalid.

*By the Court.*——The decision of the court of appeals is reversed.

¶43 SHIRLEY ABRAHAMSON and REBECCA DALLET, J.J., withdrew from participation.

31

¶44 ANN WALSH BRADLEY, J. *(dissenting).* In 2010 an Enbridge oil spill in Michigan cost $1.2 billion and has resulted in "ongoing insurance coverage litigation."

¶45 The Dane County Board of Supervisors was mindful that running an oil pipeline is a dangerous business and sought to avoid such a result. Accordingly, to ensure that Enbridge provides adequate coverage in the event of a catastrophe, it included certain insurance conditions in Enbridge's conditional use permit for expansion of a pipeline through the County.

¶46 However, the legislature stepped in and passed Wis. Stat. §§ 59.69(2)(bs) and 59.70(25). These new provisions have preemptive effect on county action. They prohibit a county from requiring that an oil pipeline operator obtain additional insurance if the operator "carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability." § 59.70(25).

¶47 The majority determines that Enbridge maintains the requisite insurance, and that therefore Dane County can require of it no more. Majority op., ¶2. In doing so, the majority endorses an unreasonable result through its interpretation of the word "carries" and departs from this court's precedent that defined "sudden and accidental."

¶48 I agree with the unanimous court of appeals that "Enbridge failed to demonstrate at any time that it carried sudden and accidental pollution liability insurance." Enbridge Energy Co., Inc. v. Dane Cty., No. 2016AP2503 & 2017AP13,

1

unpublished slip op., ¶78 (Wis. Ct. App. May 24, 2018). Accordingly, I respectfully dissent.

I

¶49 The majority errs in its interpretation of two key statutory terms——"carries" and "sudden and accidental." Accordingly, its determination that Enbridge "carries" the requisite insurance to trigger Act 55's preemption provisions is in error. As the court of appeals unanimously determined, Enbridge made no such showing.

¶50 Pursuant to Wis. Stat. § 59.70(25), "[a] county may not require an operator of an interstate hazardous liquid pipeline to obtain insurance if the pipeline operating company carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability." In other words, if the pipeline operating company carries CGL insurance that includes coverage for "sudden and accidental" pollution liability, then a county may not require it to "obtain" additional insurance.[1]

¶51 Our essential task in this case is therefore to determine if Enbridge "carries" such insurance. To answer this question, we must look to the words of the statute. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271

---

[1] See also Wis. Stat. § 59.69(2)(bs) ("As part of its approval process for granting a conditional use permit . . . , a county may not impose on a permit applicant a requirement that is expressly preempted by federal or state law.").

Wis. 2d 633, 681 N.W.2d 110. If the meaning is plain, we need not inquire further. Id.

¶52 Two statutory terms are of particular note: "carries" and "sudden and accidental." With regard to the term "carries," the majority draws a distinction between "carrying" and "maintaining" insurance. Majority op., ¶23. In the majority's view, "the statutory text does not require an operator to 'maintain' the specified insurance coverage[,]" and thus Enbridge need not demonstrate that it "carries" the requisite insurance at any time other than the discrete point in time at which the conditional use permit was issued. Id.

¶53 Such an interpretation leads to an absurd result. Interpreting "carries" to indicate a discrete moment in time appears to allow Enbridge to have no insurance at all provided that it previously carried insurance at the moment the conditional use permit was granted. Unlike the majority, I agree with the court of appeals that "when as here a county issues a conditional use permit that includes a produce-proof-on-demand requirement, then the operator must produce, on demand, proof of the insurance that triggers the insurance limitation." Enbridge Energy Co., Inc., unpublished slip op., ¶73.

¶54 Here, Enbridge has made no showing that it "carries" the requisite insurance. As the court of appeals wrote, Enbridge "pointed only to coverage that was, at best, lapsing." Id., ¶75.

3

¶55 Turning to the phrase "sudden and accidental," the majority determines that "'sudden' in the context of Wis. Stat. § 59.70(25) applies a temporal meaning, such as something happening quickly, abruptly, or immediately." Majority op., ¶28. Applying this definition, it concludes that Enbridge's "time element" policy fulfills this requirement because its policy "provides coverage for claims 'arising from a pollution event that begins and is discovered within 30 days' after its occurrence 'and is reported to the insurance company within 90 days.'" Id., ¶31. In the majority's view, such coverage "is not limited to sudden or quick events" and is therefore "broader than the statutorily-described insurance." Id.

¶56 This case, however, is not the court's first go-round with the term "sudden and accidental." In Just v. Land Reclamation, Ltd., 155 Wis. 2d 737, 456 N.W.2d 570 (1990), this court exhaustively examined the term in the context of an insurance policy. The Just court determined that "sudden and accidental" can reasonably be interpreted to mean both "abrupt or immediate" and "unexpected and unintended." Id. at 741-42, 745-46.

¶57 The legislature is presumed to act with full knowledge of existing case law when it enacts a statute. Strenke v. Hogner, 2005 WI 25, ¶28, 279 Wis. 2d 52, 694 N.W.2d 296. Accordingly, the legislature presumably enacted Act 55 with the knowledge that this court had previously interpreted the phrase "sudden and accidental" in Just.

4

¶58 However, the majority departs from the definition we provided in Just, reasoning that the term has a different meaning in the context of a statute than it does in an insurance policy. Majority op., ¶30. But why should this be the case when the court has provided a clear and workable definition of which the legislature is presumed to have full knowledge?

¶59 Why is the plain language of an insurance policy to be defined differently than the plain language of a statute? When we encounter undefined terms in both a statute and an insurance policy, we apply the plain language of the term. See Kalal, 271 Wis. 2d 633, ¶45 (explaining that "statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'") (citations omitted); Acuity v. Bagadia, 2008 WI 62, ¶13, 310 Wis. 2d 197, 750 N.W.2d 817 (setting forth that unambiguous policy language is interpreted "in accordance with the plain meaning of its provisions") (citation omitted).

¶60 Again, I would follow the lead of the unanimous court of appeals and apply the plain meaning definition of "sudden and accidental" we set forth in Just, 155 Wis. 2d 737. See Enbridge Energy Co., Inc., unpublished slip op., ¶92.

¶61 Applying Just, Enbridge must demonstrate that the insurance it carries covers pollution events that are both "abrupt or immediate" and "unexpected and unintended." Enbridge's policy does not cover all events of these types. The "time element" nature of the policy means that pollution is only covered if it is discovered within 30 days and reported to the

5

insurer within 90 days. Pollution discovered on the 31st day after it happened would not be covered, even if the pollution was "abrupt or immediate" or "unexpected and unintended." The statute requires that all "sudden and accidental" events be covered, yet Enbridge's "time element" policy constrains covered events based on when they are discovered and reported.

¶62 In sum, I determine that Enbridge did not demonstrate that it "carries" insurance that includes "sudden and accidental" coverage. The condition precedent to trigger the preemptive provisions of Wis. Stat. §§ 59.69(2)(bs) and 59.70(25) are therefore not fulfilled. Accordingly, I would affirm the court of appeals.

¶63 For the foregoing reasons, I respectfully dissent.

6