**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 18, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP567**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV206

**IN COURT OF APPEALS
DISTRICT IV**

DANIEL BIRGE AND MELISSA BIRGE,

   PLAINTIFFS-APPELLANTS,

 V.

SIMPLICITY CREDIT UNION,

   DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Wood County: TODD P. WOLF, Judge. *Affirmed.*

Before Graham, P.J., Kloppenburg, and Nashold, JJ.

¶1   NASHOLD, J.   When Daniel and Melissa Birge defaulted on a loan agreement secured by a vehicle they owned, Simplicity Credit Union (Simplicity) repossessed the vehicle and sold it. After repossession and before the sale, Simplicity sent the Birges a pre-sale notice that stated how the Birges' deficiency

would be calculated once the vehicle was sold. The notice followed the "safe-harbor" language set forth in WIS. STAT. § 409.614(3) (2023-24), a provision of Wisconsin's Uniform Commercial Code (UCC).[1] *See* WIS. STAT. § 401.102(1) ("Chapters 401 to 411 may be cited as the uniform commercial code."). After the sale, Simplicity sent the Birges a post-sale notice that informed them of their deficiency balance and how it was calculated.

¶2 The Birges sued Simplicity in a class action, alleging that the pre- and post-sale notices were legally insufficient under the UCC because the notices did not incorporate certain information from WIS. STAT. § 425.210, a provision of the Wisconsin Consumer Act (WCA). *See* WIS. STAT. § 421.101 ("Chapters 421 to 427 shall be known and may be cited as the Wisconsin consumer act."). Specifically, the Birges alleged that, consistent with § 425.210, the notices were required to describe the deficiency as the difference between the loan balance and the fair market value of the vehicle, rather than as the difference between the loan balance and the vehicle's sale price. The circuit court granted summary judgment in favor of Simplicity, dismissing the Birges' complaint. The Birges appeal.

¶3 For the reasons that follow, we conclude that WIS. STAT. § 425.210 of the WCA does not alter what is required by the UCC's notice provisions and that Simplicity's notices were sufficient under the UCC. Accordingly, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

**BACKGROUND**

¶4      The following facts are derived from the parties' summary judgment materials and are undisputed for purposes of summary judgment.

¶5      The Birges entered into a loan and security agreement with Simplicity in order to pay for repairs to the Birges' vehicle.  The loan was for $4,222.42 and was secured by the Birges' vehicle.  At the time, Simplicity valued the vehicle at $5,025.

¶6      The Birges defaulted shortly after entering the agreement, and Simplicity repossessed the vehicle.  Simplicity sent the Birges a notice that informed them that Simplicity intended to sell the vehicle at a private sale and when and where the sale would take place.  This pre-sale notice used the "safe-harbor" language set forth in WIS. STAT. § 409.614(3) of the UCC, which we discuss below.  Using this language, the notification stated, in relevant part:

> The money that we get from the sale (after paying our costs) will reduce the amount you owe.  If we get less money than you owe, you will still owe us the difference …. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

¶7      Simplicity sold the vehicle, which had over 243,000 miles on the odometer and was in rough condition, at a private auction for $500.  As Simplicity explained to the Birges in the post-sale notice, after subtracting auction fees of $130 and vehicle preparation costs of $175, Simplicity applied the remaining $195 to the loan balance, which left a deficiency of $4,233.48.  The Birges have not paid any portion of the deficiency, nor has Simplicity sought to collect on the deficiency.

¶8      The Birges brought a class action against Simplicity.  Pertinent here, the Birges alleged that the pre-sale notice violated WIS. STAT. § 409.614(1)(b) because it did not accurately describe how the deficiency would be calculated, and that the post-sale notice violated WIS. STAT. § 409.616 because it did not accurately describe the deficiency.  Specifically, the Birges alleged that, consistent with WIS. STAT. § 425.210 of the WCA, the notices were required to describe the deficiency as the difference between the loan balance and the fair market value of the vehicle, rather than as the difference between the loan balance and the vehicle's sale price.

¶9      Simplicity moved for summary judgment, arguing that WIS. STAT. § 425.210 did not apply to the notices, that the pre-sale notice was sufficient because Simplicity used the safe-harbor language set forth in WIS. STAT. § 409.614(3), and that the post-sale notice was sufficient under WIS. STAT. § 409.616 because it accurately described the Birges' deficiency liability.[2]  The circuit court granted Simplicity's motion and dismissed the Birges' complaint.

¶10      The Birges appeal.[3]

---

[2] After Simplicity filed its motion for summary judgment, the Birges filed an amended complaint, which is the operative complaint for purposes of this appeal, and which we refer to as simply "the complaint."  The differences between the original complaint and the amended complaint are not material to our analysis.  After the Birges filed their amended complaint, Simplicity filed a new motion for summary judgment.

[3] In addition to their claims under WIS. STAT. §§ 409.614 and 409.616, the Birges alleged other claims that were also dismissed on summary judgment.  The Birges do not challenge the dismissal of these other claims in their brief-in-chief, and only do so in their reply brief in a cursory fashion.  Accordingly, we do not address the Birges' assertions regarding these claims.  *See State v. Mata*, 230 Wis. 2d 567, 576 n.4, 602 N.W.2d 158 (Ct. App. 1999) (stating that we need not address issues raised for the first time in a reply brief); *Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 (stating that we need not address undeveloped arguments).

(continued)

**DISCUSSION**

¶11 "We review summary judgment decisions de novo, applying the same methodology as the [circuit] court." ***Kiss v. General Motors Corp.***, 2001 WI App 122, ¶9, 246 Wis. 2d 364, 630 N.W.2d 742. Summary judgment is proper when the summary judgment materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶12 Here, our review requires us to interpret various statutes, including WIS. STAT. §§ 409.614, 409.616, and 425.210. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory interpretation 'begins with the language of the statute.'" ***Id.***, ¶45 (quoted source omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***Id.*** "Context is important to meaning." ***Id.***, ¶46. Accordingly, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.*** We may also look to a statute's history to

---

Separately, the Birges' briefs do not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). As our supreme court explained when it amended the rule, the pagination requirement ensures that the numbers on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at x1.

ascertain its meaning. ***Wisconsin State Legislature v. Kaul***, 2025 WI App 2, ¶36, 414 Wis. 2d 633, 17 N.W.3d 24 (2024). As with summary judgment, the interpretation of a statute presents a question of law that we review de novo. ***Id.***, ¶19.

¶13 WISCONSIN STAT. ch. 409, part of Wisconsin's version of the UCC, regulates transactions that are secured by collateral, and specifically provides parties to secured transactions certain rights in the event of a default. *See* WIS. STAT. § 409.101 ("This chapter may be cited as uniform commercial code — secured transactions."); WIS. STAT. § 409.601 (titled "Rights after default ….").

¶14 Relevant here, a secured party must notify a debtor before the secured party disposes of collateral following the debtor's default. *See, e.g.*, WIS. STAT. § 409.611(2). It is undisputed that, for purposes of the transaction in this case, Simplicity is a secured party, the Birges are debtors, and the Birges' vehicle was collateral that was disposed of after the Birges' default. WIS. STAT. § 409.102(1)(rs), (gs).

¶15 WISCONSIN STAT. § 409.614 states that a notification of disposition—referred to in this opinion as a pre-sale notice—must include particular information, including, as relevant here, "[a] description of any liability for a deficiency of the person to which the notification is sent." § 409.614(1)(b).[4] Although § 409.614(2) states that "[a] particular phrasing of the notification is not

---

[4] WISCONSIN STAT. § 409.614 applies to consumer-goods transactions. The parties do not dispute that the secured transaction in this case was a consumer-goods transaction. *See* WIS. STAT. § 409.102(1)(fs) (defining a "consumer-goods transaction" as one in which "[a]n individual incurs an obligation primarily for personal, family, or household purposes," and in which "[a] security interest in consumer goods secures the obligation").

required," § 409.614(3) provides a "form of notification" that, "when completed, provides sufficient information." In relevant part, the form states the following:

> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you .... [*will or will not, as applicable*] still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

§ 409.614(3) (alteration in original). The official comment to this provision of the UCC refers to this prescribed form as a "safe-harbor form of notification." Official U.C.C. Comment 3, WIS. STAT. ANN. § 409.602 (West 2025); *see also* ***Williams v. American Honda Fin. Corp.***, 907 F.3d 83, 85 (1st Cir. 2018) (referring to analogous language in Massachusetts' version of the UCC as "safe-harbor language").[5] Here, it is undisputed that Simplicity's pre-sale notice used this safe-harbor language.

¶16 A secured party must also, once the collateral has been disposed of, send a debtor an "explanation of calculation," referred to in this opinion as a post-sale notice. *See, e.g.*, WIS. STAT. § 409.616(2). As relevant here, a post-sale notice must state the amount of the surplus or deficiency. § 409.616(1), (2). It is undisputed that Simplicity's notice stated an amount of deficiency, which was calculated as the outstanding loan balance minus the collateral's sale price and associated costs.

¶17 Separately, WIS. STAT. § 425.210, part of the WCA, states how to calculate a deficiency judgment: "If the creditor is entitled to a deficiency

---

[5] Consistent with this, the parties refer to the form provided in WIS. STAT. § 409.614(3) as a "safe-harbor form," and to its language as "safe-harbor language," and we do the same.

judgment pursuant to [WIS. STAT. §] 425.209(1), the creditor shall be entitled to recover from the customer the deficiency, if any, remaining after deducting the fair market value of the collateral from the unpaid balance." *See also* § 425.209(1) (stating that "a customer is not liable for a deficiency unless the merchant has disposed of the goods in good faith and in a commercially reasonable manner").

¶18 The Birges argue that their claims were improperly dismissed on summary judgment because Simplicity's pre- and post-sale notices were insufficient in that they failed to describe the deficiency using the fair market value of the vehicle, which the Birges argue was required under WIS. STAT. §§ 409.614 and 409.616, as altered by WIS. STAT. § 425.210. We address and reject the Birges' arguments as to each notice in turn.

### *I. Pre-sale Notice*

¶19 As stated, WIS. STAT. § 409.614(1)(b) of the UCC requires that a pre-sale notice include a description of the debtor's deficiency liability. Section 409.614(3) also provides a safe-harbor form, which that subsection states "provides sufficient information" to satisfy the requirements of § 409.614(1). *See also* Official U.C.C. Comment 3, WIS. STAT. ANN. § 409.614 (West 2025) ("Although paragraph (2) provides that a particular phrasing of a notification is not required, paragraph (3) specifies a safe-harbor form that, when properly completed, satisfies paragraph (1)."). Here, it is undisputed that in describing the Birges' deficiency liability, Simplicity used the safe-harbor language set forth in § 409.614(3). Despite Simplicity's strict compliance with this statutory language, the Birges argue that the pre-sale notice was nonetheless insufficient because, according to the Birges, a different statute located in a different chapter of the Wisconsin Statutes—WCA's WIS. STAT. § 425.210—governs what a pre-sale

notice must state. Under that statute, the Birges argue, Simplicity was required to inform the Birges that the fair market value of the vehicle would be deducted from the loan balance in describing their deficiency liability. We reject the Birges' contention and we conclude that Simplicity's pre-sale notice was sufficient under § 409.614.

¶20 The analysis that compels our conclusion is straightforward. Simplicity's pre-sale notice followed the safe-harbor language of WIS. STAT. § 409.614(3), which, as that subsection explicitly states, "provides sufficient information" to satisfy the requirements of § 409.614(1). The Birges' argument that we must alter § 409.614(3)'s safe-harbor language because of WIS. STAT. § 425.210 would nullify the language in § 409.614(3) stating that the safe-harbor form "provides sufficient information," which would be contrary to the statute's plain meaning and well-established tenets of statutory construction. *See, e.g.*, *Kalal*, 271 Wis. 2d 633, ¶45 (stating that statutory interpretation begins with the language of statute and that when the meaning of statutory language is plain, we ordinarily end our analysis); *id.*, ¶39 ("'We have stated time and again that courts must presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)); *Kalal*, 271 Wis. 2d 633, ¶46, ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."); *Enbridge Energy Co. v. Dane County*, 2019 WI 78, ¶28, 387 Wis. 2d 687, 929 N.W.2d 572 ("'If possible, every word and every provision is to be given effect .... None should be ignored. None should needlessly be given an interpretation that causes it ... to have no consequence.'" (quoted source omitted)). Accordingly, we reject the Birges' interpretation of § 409.614(3), under which a

9

person complying with the safe-harbor language would be provided no harbor at all.

¶21     The Birges offer two arguments in support of their position, neither of which is persuasive.  The Birges first rely on WIS. STAT. § 409.614(5), which states the following: "A notification in the form of [§ 409.614](3) is sufficient, even if it includes errors in information not required by [§ 409.614](1), unless the error is misleading with respect to rights arising under this chapter."  The Birges argue that Simplicity's pre-sale notice using § 409.614(3)'s safe-harbor language was "misleading" in that it did not state that their deficiency would be calculated, pursuant to WIS. STAT. § 425.210, by subtracting the vehicle's fair market value.  However, although § 409.614(5) indicates that certain types of errors may render insufficient a pre-sale notice that includes § 409.614's safe-harbor language, the errors that § 409.614(5) states may do so are errors "in information *not* required by" § 409.614(1).   § 409.614(1) (emphasis added); *see also* Official U.C.C. Comment 3, WIS. STAT. ANN. § 409.614 (West 2025) ("Paragraph (5) provides that non-misleading errors in information contained in a notification are permitted if the safe-harbor form is used *and if the errors are in information not required by paragraph (1).*" (alteration in original)).  Here, the information at issue, which the Birges argue constitutes a misleading error, is a description of the Birges' deficiency liability, which *is* required by § 409.614(1), and the Birges do not identify, nor do we discern, any "errors in information not required by [§ 409.614](1)" in Simplicity's pre-sale notice.  For at least this reason, the Birges' reliance on § 409.614(5) is unavailing.

¶22     The Birges also invoke the interpretive canon of *in pari materia*, which counsels that when multiple statutes address the same subject matter, they should be interpreted "'such that [all] will be operative'" and "to avoid conflicts if

a reasonable non-conflicting interpretation is possible." *See Associated Builders & Contractors of Wis., Inc. v. City of Madison*, 2023 WI App 59, ¶36, 409 Wis. 2d 660, 998 N.W.2d 549 (quoted source omitted).

¶23    The Birges argue that we must apply the canon of *in pari materia* to reconcile WIS. STAT. § 409.614 of the UCC with WIS. STAT. § 425.210 of the WCA.   As stated, § 425.210 provides that "[i]f the creditor is entitled to a deficiency judgment pursuant to [WIS. STAT. §] 425.209(1), the creditor shall be entitled to recover from the customer the deficiency, if any, remaining after deducting the fair market value of the collateral from the unpaid balance." According to the Birges, the only way to harmoniously construe §§ 409.614 and 425.210 is to require the pre-sale notice to state that a debtor's deficiency liability will be calculated by subtracting the collateral's fair market value.  In other words, the Birges argue that our interpretation of § 409.614, pursuant to which Simplicity's pre-sale notice was sufficient, creates a conflict with § 425.210.  We reject this argument because, as we now explain, we conclude—based on the language of §§ 409.614 and 425.210, the language of related statutes, and the history of § 425.210—that our interpretation of § 409.614 does not conflict with § 425.210.  Indeed, assuming that the two statutes address the same subject matter, our interpretation more faithfully comports with the canon of *in pari materia* by giving full force and effect to the language of both statutes.  *See State v. Jeremiah C.*, 2003 WI App 40, ¶17, 260 Wis. 2d 359, 659 N.W.2d 193 ("It is our duty to construe statutes on the same subject matter in a manner that harmonizes them in order to give each full force and effect.").

¶24    First, a plain language analysis reveals that there is no conflict between our interpretation of WIS. STAT. §§ 409.614 and § 425.210.  As stated, § 409.614 specifically governs pre-sale notices that secured parties must send

11

debtors before disposing of the collateral securing a transaction.  In contrast, § 425.210 does not mention notice requirements in any way.  Instead, it addresses how to calculate a deficiency *judgment* in certain court proceedings under the WCA after the collateral securing a transaction has been disposed of.  Specifically, § 425.210 applies "[i]f the creditor is entitled to *a deficiency judgment* pursuant to [WIS. STAT. §] 425.209(1)" (emphasis added), and § 425.209(1) states that "a customer is not liable for a deficiency unless the merchant has disposed of the goods in good faith and in a commercially reasonable manner."  *See also Shoeder's Auto Ctr., Inc. v. Teschner*, 166 Wis. 2d 198, 200, 479 N.W.2d 203 (Ct. App. 1991) (stating that under § 425.209(1), "it is the merchant's duty to prove as part of its prima facie case that it disposed of the goods in a commercially reasonable manner before it is entitled to recover a deficiency judgment").  Accordingly, § 409.614(3)'s safe-harbor language for pre-sale notices, which are sent prior to the disposition of collateral and which may or may not precede litigation to recover a deficiency judgment, does not conflict with § 425.210, which governs the calculation of deficiency judgments in court proceedings after collateral has been disposed of.  *See* WIS. STAT. § 425.206 (allowing a creditor to enforce its right to recover collateral outside of judicial proceedings).  When, as here, no action for a deficiency judgment was filed, § 425.210 simply does not apply.

¶25    Context also reveals that WIS. STAT. §§ 409.614 and 425.210 do not conflict as the Birges argue, and are in fact complementary parts of a cohesive statutory scheme.  Indeed, the WCA expressly provides that the UCC governs transactions unless superseded by a particular provision of the WCA: WIS. STAT. § 421.103(3) states, "Unless superseded by the particular provisions of [WIS. STAT.] chs. 421 to 427 [the WCA], parties to a consumer transaction have all of

the obligations, duties, rights and remedies provided in [WIS. STAT.] chs. 401 to 411 [the UCC] which apply to the transaction." *See also* ***Abdella v. Abdella***, 268 Wis. 127, 130, 66 N.W.2d 689 (1954) (stating that a statute is superseded by another when the statutes are "repugnant and irreconcilable" with one another); WIS. STAT. § 401.104 ("Chapters 401 to 411 being a general act intended as a unified coverage of its subject matter, no part of it shall be deemed to be impliedly repealed by subsequent legislation if such construction can reasonably be avoided."). Here, because § 409.614 is not "superseded" by § 425.210, Simplicity retains all of the obligations, duties, rights, and remedies provided in § 409.614, including the protections of that statute's safe-harbor provision.

¶26 Moreover, as Simplicity points out, where the legislature intended for the WCA to displace other statutory provisions, the WCA expressly states as much. *See, e.g.*, WIS. STAT. § 421.107(1) ("Except as specifically provided, [WIS. STAT.] chs. 421 to 427 [the WCA] prescribe maximum charges for all consumer credit transactions *and displace existing limitations* on the powers of creditors based on maximum charges." (emphasis added)). As Simplicity argues, if the legislature had intended for WIS. STAT. § 425.210 to displace or alter the terms of WIS. STAT. § 409.614, the legislature could have drafted § 425.210 so that § 425.210 expressly did so. *See* ***State ex rel. McDonald v. Circuit Ct. for Douglas Cnty., Branch II***, 100 Wis. 2d 569, 578, 302 N.W.2d 462 (1981) ("[T]he legislature, in enacting statutes, is presumed to do so with full knowledge and awareness of existing statutes.").

¶27 The history of WIS. STAT. § 425.210 further supports the conclusion that WIS. STAT. § 409.614 and § 425.210 govern different contexts. Section 425.210 is the older of the two statutes; it was enacted in 1971 and has not been amended since. *See* 1971 Wis. Act 239, § 38. Significantly, prior to the

enactment in 2006 of WIS. STAT. § 425.206—which allows for nonjudicial enforcement of a creditor's right to recover certain types of collateral—a creditor had to first obtain a court judgment before it could take possession of the collateral and then seek to dispose of the collateral, which required court confirmation.[6] WIS. STAT. §§ 425.203, .206(1) (2003-04); 2005 Wis. Act 255, § 4.[7] This means that, when enacted, § 425.210 could apply *only* in judicial proceedings after the collateral had been disposed of, which, as discussed, the language of § 425.210 reflects. This is significant because when the legislature amended the WCA over thirty years later in 2006 to allow for nonjudicial enforcement of a creditor's right to recover and dispose of collateral, the legislature left § 425.210 unchanged. The legislature did nothing to reflect an intent that § 425.210 should apply more expansively than was intended at the time of its enactment.

¶28 In sum, we reject the Birges' argument that, unless the requirements of WIS. STAT. § 425.210 are imported into the notice requirements of WIS. STAT. § 409.614(3), there would be a conflict between §§ 409.614 and 425.210. Although the Birges argue that their reading is necessary to harmonize §§ 409.614 and 425.210, their reading of the relevant statutes in fact creates conflict where none exists. When, consistent with its language, § 425.210 is properly confined to the calculation of a deficiency judgment in a judicial action to recover the same,

---

[6] Prior to 2006, the only exceptions were if the customer voluntarily surrendered the collateral or if the merchant reasonably believed that the customer had abandoned the collateral. *See* WIS. STAT. §§ 425.203, 425.206(1) (2003-04).

[7] *See also* Kelly Anderson & Steve Meili, *Wisconsin's New Automobile Repossession Law: Creditors in the Driver's Seat*, WIS. L., Feb. 2007, https://www.wisbar.org/NewsPublications/WisconsinLawyer/pages/article.aspx?Volume=80&Issue=2&ArticleID=1413 ("On April 13, 2006, Wisconsin's motor vehicle repossession law changed in a significant way when provisions took effect that allow creditors to repossess motor vehicles without judicial process.").

both § 409.614 (particularly its safe-harbor language) and § 425.210 can be given full effect. *See State v. Lanning*, 2023 WI App 52, ¶14, 409 Wis. 2d 453, 997 N.W.2d 123 ("Where multiple statutes are at issue, we seek 'to harmonize them through a reasonable construction that gives effect to all provisions.'" (quoting *State v. Reyes Fuerte*, 2017 WI 104, ¶29, 378 Wis. 2d 504, 904 N.W.2d 773)).[8]

¶29    Accordingly, we reject the Birges' argument that Simplicity's pre-sale notice was insufficient.

## II.  Post-sale Notice

¶30    The Birges argue that Simplicity's post-sale notice was legally insufficient.  As an initial matter, we observe that, on appeal, the Birges raise this argument for the first time in their reply brief, their argument is largely undeveloped, and we could reject their argument for these reasons alone.  *See State v. Mata*, 230 Wis. 2d 567, 576 n.4, 602 N.W.2d 158 (Ct. App. 1999); *Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768.  However, because the Birges raised an argument about the post-sale notice in the circuit court and Simplicity addressed it in its respondent's brief and did not argue

---

[8] In support of their argument, the Birges cite as persuasive authority *Williams v. American Honda Finance Corp.*, 98 N.E.3d 169 (Mass. 2018).  In *Williams*, the Supreme Judicial Court of Massachusetts concluded that the safe-harbor language from that state's version of the UCC "is never sufficient where the deficiency is not calculated based on the fair market value of the collateral and the notice fails to accurately describe how the deficiency is calculated." *Id.* at 179.  However, in reaching this conclusion, the *Williams* court relied on the fact that Massachusetts' version of the UCC applied "unless displaced" by specific laws, and the court concluded that a law that provided that deficiencies should be calculated using the fair market value of the collateral displaced the UCC's safe-harbor provision. *Id.* (internal quotation marks and quoted source omitted).  Here, the Birges do not identify any analogous Wisconsin law stating that WIS. STAT. § 425.210's method of calculating a deficiency judgment was intended to displace the safe-harbor language set forth in WIS. STAT. § 409.614(3) stating how a debtor's deficiency will be described, and we do not deem *Williams* to be persuasive for at least this reason.

that the Birges had forfeited or abandoned the issue, we will address the Birges'
argument to the extent that it is developed.

¶31    The Birges assert that Simplicity's post-sale notice violated WIS.
STAT. § 409.616, which, as noted, requires that a post-sale notice "[s]tate[] the
amount of the surplus or deficiency." § 409.616(1)(a)1.  In making this assertion,
the Birges do not meaningfully discuss the relevant language in § 409.616 or
develop an argument based on that language.  Instead, the Birges' argument is
predicated on the same rationale as that used in support of their argument that
Simplicity's pre-sale notice was deficient—that the post-sale notice was deficient
because it "did not advise the Birges [that] the fair market value of the collateral
would be used to determine the deficiency judgment," pursuant to WIS. STAT.
§ 425.210.  We reject this argument regarding Simplicity's post-sale notice for the
same reason we reject the Birges' argument regarding the pre-sale notice: namely,
because we conclude that § 425.210 governs judicial actions brought to recover
deficiency judgments after the collateral has been disposed of, but does not alter
the UCC's safe-harbor provision.

¶32    As an additional basis to reject the Birges' argument regarding the
post-sale notice, as Simplicity points out, WIS. STAT. § 409.616 requires that a
post-sale notice include "the amount of the surplus or deficiency" as well as other
amounts used in the calculation of the surplus or deficiency.  *See*
§ 409.616(1)(a)1., 2., (3).  That the statute requires the post-sale notice to include a
specific dollar amount is significant because at the time the post-sale notice is sent
in a nonjudicial repossession such as the one here, the sale price may be the only
indication of the collateral's fair market value.  To the extent that there might be a
dispute about the fair market value, that dispute would not be conclusively
resolved until the fair market value of the collateral has been determined by the

court. As Simplicity argues, the Birges' interpretation would make compliance with § 409.616 impossible because it would require the creditor to enter a potentially unknown number into the post-sale notice rather than the sale price.[9]

¶33 In sum on this issue, we reject the Birges' argument that Simplicity's post-sale notice was insufficient.

## CONCLUSION

¶34 Because the undisputed facts establish that Simplicity's pre- and post-sale notices were legally sufficient, the circuit court properly granted summary judgment in favor of Simplicity and dismissed the Birges' complaint. Accordingly, we affirm.[10]

*By the Court.*—Judgment affirmed.

Recommended for publication in the official reports.

---

[9] Simplicity argues as much in its response brief, and the Birges do not address this argument in their reply brief, which we treat as a concession. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure by appellant to respond in reply brief to an argument made in respondent's brief may be taken as a concession).

[10] Simplicity argues that we could also reject the Birges' challenges to the pre- and post-sale notices for various other reasons, namely because: the vehicle's sale price from a commercially reasonable sale is the same as the vehicle's fair market value; WIS. STAT. § 425.210 cannot "displace" WIS. STAT. § 409.614 as a result of the WCA's limited scope in comparison to that of the UCC; the Birges' assertion that § 425.210 impliedly repeals the safe-harbor language in § 409.614 violates Wisconsin statutory and common law; and Simplicity was not seeking to collect a deficiency for a "consumer credit sale" or "an interlocking consumer loan" as provided by WIS. STAT. §§ 422.408, 425.409, and 425.210. We do not address these additional contentions because we reject the Birges' arguments for the reasons stated. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (we need not address every issue when one is dispositive).

17